IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TAMMIE MECHAM and DENNIE MECHAM,<br><br>Plaintiffs,<br>v.<br>C.R. BARD, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00750-JNP<br><br>District Judge Jill N. Parrish |

Before the court is Defendant C.R. Bard, Inc.'s ("Defendant") Motion for Summary Judgment. At issue is whether Plaintiffs Tammie Mecham and Dennie Mecham (collectively, "Plaintiffs") discovered, or in the exercise of due diligence should have discovered, their alleged injuries and a causal relation to Defendant's pelvic mesh product for purposes of complying with the Utah Product Liability Act's two-year statute of limitations. The court grants Defendant's Motion for Summary Judgment because Plaintiffs failed to timely file their Complaint.

## I.   BACKGROUND

**A. PROCEDURAL HISTORY**

This case originally was part of Multidistrict Litigation No. 2187 ("MDL 2187"), which the Judicial Panel on Multidistrict Litigation assigned to District Judge Joseph R. Goodwin of the Southern District of West Virginia. *See* ECF No. 47. MDL 2187 involved over 100,000 cases against the Defendant, raising various products liability claims involving the Defendant's pelvic mesh products used to treat certain conditions such as pelvic organ prolapse and stress urinary incontinence ("SUI"). *Id.* Plaintiffs filed their Short Form Complaint in MDL 2187 on July 16, 2015, *see* ECF No. 39–1, which asserts all of the causes of action set forth in the MDL 2187 Master

Complaint,[1] including negligence, strict liability for a design defect, strict liability for a manufacturing defect, strict liability for failure to warn, breach of express warranty, breach of implied warranty, loss of consortium, and a claim for punitive damages. On September 26, 2019, Judge Goodwin transferred this matter to the District of Utah pursuant to 28 U.S.C. § 1404(a). *See* ECF No. 47. This court is an appropriate venue because Plaintiffs are domiciled in Utah and the implant procedure occurred in Utah. At the time of transfer, the parties had engaged in discovery before Judge Goodwin and fully briefed Defendant's Motion for Summary Judgment. The parties have also supplemented the record. *See* ECF Nos. 60–68.

### B. FACTUAL BACKGROUND

On June 20, 2012, Dr. John Nolte implanted Mrs. Mecham with a pelvic mesh product called the Align TO Urethral Support System (the "Align TO") at the Uintah Basin Medical Center in Roosevelt, Utah. C.R. Bard, Inc. designed, manufactured, packaged, labeled, marketed, sold, and distributed the Align TO, including the product implanted in Mrs. Mecham. Mrs. Mecham underwent this procedure to address her SUI condition.

In incorporating the allegations in the Master Complaint, Plaintiffs argue that the Defendant's pelvic mesh product is biologically incompatible with human tissue and promotes a negative immune response in implanted patients. In their specific case, Plaintiffs contend that after Mrs. Mecham's procedure, she began experiencing worsened SUI, or "leaking," when she played sports, sneezed, or walked a certain way. Additionally, Plaintiffs allege that after her implant procedure, Mrs. Mecham began experiencing pain during intercourse known as dyspareunia and decreased libido.

---

[1] The Master Complaint is available on the MDL 2187 website at https://www.wvsd.uscourts.gov/MDL/2187/pdfs/FinalMasterComplaint.pdf (last visited May 26, 2020).

The parties dispute the time of the onset of Mrs. Mecham's symptoms after her procedure.[2] Defendant argues that Plaintiffs knew or should have known about Mrs. Mecham's injuries and their alleged cause by December 20, 2012—or by June 20, 2013 at the latest—and her claims accrued on that date. Plaintiffs argue that Mrs. Mecham did not experience initial symptoms until a year after her procedure, and did not know the full extent of her harm until some time in 2014 or 2015. Plaintiffs also assert that at no time before the filing of their Short Form Complaint on July 16, 2015, did any of Mrs. Mecham's physicians inform her that her symptoms were attributable to her implanted Align TO pelvic mesh.

On October 18, 2018, Defendant moved for summary judgment on all of Plaintiffs' claims, alleging that Plaintiffs filed their Short Form Complaint outside the Utah Product Liability Act's two-year statute of limitations. Alternatively, Defendant moved for partial summary judgment on the merits of Plaintiffs' claims for negligent and strict liability manufacturing defect, failure to warn, breach of express warranty, breach of implied warranty, and negligence claims based on negligent marketing, labelling, packaging, and selling of the Align TO. Plaintiffs argue that their claims are not time-barred because they did not or could not have discovered the facts necessary for their claims to accrue until after July 16, 2013, which is within two years of when they filed suit. Plaintiffs also argue that summary judgment in favor of Defendant is inappropriate on all of their other claims, but effectively concede they will not pursue a separate claim for manufacturing defect. Construing the facts in the light most favorable to Plaintiffs as the nonmovant, the court

---

[2] Mrs. Mecham provided testimony regarding the timeline of her symptoms on three occasions: her initial Plaintiff Fact Sheet submitted April 23, 2018 (ECF No. 39–4), her deposition taken on June 20, 2018 (ECF No. 39–3), and her second Plaintiff Fact Sheet submitted on October 1, 2018 (ECF No. 39–2). But Mrs. Mecham's testimony as to when she began experiencing symptoms is inconsistent. *See* ECF No. 40 at 11 n.5.

finds that all of Plaintiffs' claims accrued over two years before they filed suit. Therefore, Plaintiffs' claims are time-barred.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to . . . the party opposing summary judgment," *Concrete Works of Colorado, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), and "the judge's function is not to weigh the evidence and determine the truth of the matter," *id.* at 1518 (citing *Anderson*, 477 U.S. at 249). "Nonetheless, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Id.* (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Additionally, Defendant is permitted to move for summary judgment on its statute of limitations defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). The parties do not dispute that Utah state substantive law governs this case, including the applicable state statute of limitations. *See Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013) ("A federal court sitting in diversity applies the substantive law of the state where it is located, including the state's statutes of limitations."). Under Utah law, the Defendant bears the burden of proving a claim is barred by the relevant statute of limitations. *See* UTAH R. CIV. P. 8(c), 9(h); *see*

*also Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1238 (10th Cir. 2010) (applying state burden of proof to issues underlying statute of limitations defense).

### III. DISCUSSION

The determination of this Motion for Summary Judgment begins and ends with the applicable two-year statute of limitations under the Utah Product Liability Act (UPLA). Defendant argues that Plaintiffs' claims accrued as early as December 12, 2012, *see* ECF No. 40 at 10, or as late as June 20, 2013, *see* ECF No. 43 at 5, because Mrs. Mecham discovered her injuries within that time, knew or should have known that Defendant manufactured the allegedly defective product, and knew or should have known that the product was the purported cause of her injuries. Because either date is more than two years before Plaintiffs filed their Complaint on July 16, 2015, Defendant argues all of Plaintiffs' claims are time-barred. Plaintiffs respond that Mrs. Mecham was not properly on notice that the Defendant's allegedly defective product was the cause of her injuries. Plaintiffs argue that their claims accrued within two years of their filing because before then, a physician had not attributed Mrs. Mecham's symptoms to the Defendant's pelvic mesh product. Accordingly, Plaintiffs neither knew nor should have known that the allegedly defective product was the cause of Mrs. Mecham's injuries. Additionally, Plaintiffs argue Mrs. Mecham was unaware of the extent of her injuries within the two-year period because some of her initial symptoms were similar in kind to those she experienced before her procedure and she did not start having dyspareunia and decreased libido until sometime in 2014 or 2015. The court finds that Plaintiffs' claims accrued, at the latest, on June 20, 2013. Because Plaintiffs did not commence this lawsuit until July 16, 2015, the court holds that Plaintiffs claims are time-barred under the UPLA two-year statute of limitations.

### A. UPLA TWO-YEAR STATUTE OF LIMITATIONS

Plaintiffs' claims are governed by the UPLA, which applies to all claims "against a manufacturer based on a defective product in both tort and contract, including claims based on negligence, strict liability, tortious misrepresentation, and breach of warranty." *Hansen v. Novartis Pharm. Corp.*, No. 2:08-CV-985, 2011 WL 6100848, at *3 (D. Utah Dec. 7, 2011) (unpublished) (citing *Utah Local Government Trust v. Wheeler Machinery Co.*, 199 P.3d 949, 951 (Utah 2008)).[3] The UPLA statute of limitations provision states:

> A civil action under this part shall be brought within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause.

UTAH CODE § 78B–6–706.[4] As a general rule, "a statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." *Russell Packard Development, Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005) (internal citation and quotations omitted). But the general rule is subject to a discovery exception under the UPLA, which starts the limitations period only after the plaintiff "discovers (or should have discovered) all of the facts that form the basis for the cause of action." *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 252 (Utah Ct. App. 1993). Because the Utah Supreme Court had not yet interpreted the meaning of the discovery rule in § 78B–6–706, the parties rely on the Utah Court of Appeal's decision in *Aragon*

---

[3] The UPLA statute of limitations analysis also applies to Mr. Mecham's loss of consortium claim, which is derivative of Mrs. Mecham's claims. *See Cannon v. Minnesota Min. & Mfg. Co.*, No. 2:08-CV-532 CW, 2009 WL 350561, at *4 (D. Utah Feb. 11, 2009) (unpublished) (citing UTAH CODE § 30–2–11(4) for the rule that "[a] claim for the spouse's loss of consortium shall be . . . subject to the same defenses, limitations, immunities, and provisions applicable to the claims of the injured person").

[4] In 2008, the Utah legislature renumbered the UPLA's two-year statute of limitations from § 78–15–3 to the current § 78B–6–706, but did not substantively change the statute. Therefore, the court also relies on pre-2008 cases applying the previous § 78–15–3.

6

*v. Clover Club Food Company*. *See Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1280 (10th Cir. 2000) (ruling that "in the absence of Utah Supreme Court precedent," federal courts must apply the legal framework set "by the lower Utah courts"). Under *Aragon*, the UPLA statute of limitations begins to run when the plaintiff discovers, or should have discovered: (1) that she has been injured; (2) the identity of the maker of the allegedly defective product; and (3) that the product had a possible causal relation to her injury. 857 P.2d at 252–53; *see also Hansen*, 2011 WL 6100848, at *3 (applying the three-part *Aragon* test).

Under this test, the UPLA requires a plaintiff to exercise due diligence in discovering the harm and a causal link to the defendant's allegedly defective product. *Aragon*, 857 P.2d at 253. "What constitutes due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so." *Id.* (citations and internal quotations omitted). But in every case, "all that is required to trigger the statute of limitations is sufficient information to put plaintiffs on notice to make further inquiry." *Macris v. Sculptured Software, Inc.*, 24 P.3d 984, 990 (Utah 2001) (citing *Berenda v. Langford*, 914 P.2d 45, 51 (Utah 1996)); *see also Adams v. Am. Med. Sys., Inc.*, 705 F. App'x 744, 746 (10th Cir. 2017) (unpublished) (applying the UPLA inquiry notice rule in a pelvic mesh products liability case). This type of inquiry notice is defined as "[w]hatever is notice enough to excite attention and put the party on his guard and call for inquiry." *McBroom v. Child*, 392 P.3d 835, 846 (Utah 2016) (citation omitted).

Once a plaintiff is on inquiry notice, he or she may be imputed with knowledge of "everything to which such inquiry might have led." *Pioneer Builders Co. of Nev., Inc. v. K D A Corp.*, 292 P.3d 672, 679 (Utah 2012); *see also Salt Lake City Corp. v. Sekisui SPR Americas, LLC*, No. 217CV01095JNPBCW, 2019 WL 4696278, at *8 (D. Utah Sept. 26, 2019) (ruling that

plaintiffs are "charged with knowledge of any facts that a reasonable investigation would have uncovered" (citing *McBroom*, 392 P.3d at 846)). Therefore, the discovery rule "does not allow plaintiffs to delay filing suit until they have ascertained every last detail of their claims," *McCollin v. Synthes Inc.*, 50 F. Supp. 2d 1119, 1124 (D. Utah 1999) (citations omitted), and "[w]hen a person has sufficient information to lead him to a fact, he shall be deemed conversant of it," *McBroom*, 392 P.3d at 846.

Generally, "when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury." *McKinnon v. Tambrands, Inc.*, 815 F. Supp. 415, 418 (D. Utah 1993) (citing *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985)). But "[w]here the evidence is so clear that there is no genuine factual issue . . . the determination can be made as a matter of law." *Id.* Here, even assuming the facts and inferences in favor of Plaintiffs as the nonmovant, Defendant has demonstrated that Plaintiffs discovered, or in the exercise of due diligence should have discovered, Mrs. Mecham's injury, the identity of C.R. Bard, Inc., and a potential causal relation between their injuries and the Defendant's pelvic mesh product more than two years prior to filing their lawsuit. Therefore, as a matter of law, Plaintiffs' claims are time-barred.

B. **DISCOVERY OF PLAINTIFFS' INJURY**

The first issue is when Plaintiffs discovered, or should have discovered, that Mrs. Mecham had suffered an injury sufficient to trigger part one of the UPLA limitations period test. The relevant harm must be a "physical injury or illness suffered by the plaintiff as a result of the defendant's conduct." *Adams*, 705 F. App'x at 746 (citations omitted). Discovery of the injury "does not mean the plaintiff must realize the full extent of [his or her] injury." *McHenry v. Utah Valley Hosp., a Div. of Intermountain Health Care, Inc.*, 724 F. Supp. 835, 839 (D. Utah 1989), *aff'd*, 927 F.2d 1125 (10th Cir. 1991). Instead, Defendant must merely show that Plaintiffs knew

8

or should have known that Mrs. Mecham had suffered "actual damages" over two years before filing their Complaint. *See Adams*, 705 F. App'x at 747 (citation omitted); *see also Cannon*, 2009 WL 350561, at *5 (applying "actual damages" standard drawn from Utah's analogous medical malpractice statute (citing *Seale v. Gowans*, 923 P.2d 1361, 1365 (Utah 1996))). In other words, an initial injury beyond a nominal harm "begins the [UPLA] limitations period, and later injuries, even new and severe ones, do not re-start it." *Cannon*, 2009 WL 350561, at *6 n.2 (citations omitted).

On April 23, 2018, Mrs. Mecham testified in her initial Plaintiff Fact Sheet that she first experienced symptoms of dyspareunia and decreased libido "right after [the] implant" surgery on June 20, 2012. *See* ECF No. 39–4 at 7–8. Mrs. Mecham also attested that she experienced "leaking about five months after" the procedure and had symptoms of "urinating way to [sic] often also about five months" after June 20, 2012. *Id.* She confirmed this approximate timeline in her amended Plaintiff Fact Sheet on October 1, 2018. *See* ECF No. 39–2 at 7–8. During her June 20, 2018 deposition, however, Mrs. Mecham testified that her urinary issues and dyspareunia started "within six months to a year" from her procedure on June 20, 2012. ECF No. 39–3 at 23:15–17. Mrs. Mecham also estimated that she experienced decreased libido in anticipation of her dyspareunia symptoms starting "the last few years" meaning "maybe . . . three to four" or "five years" prior to the time of her deposition on June 20, 2018, which she then agreed was some time in 2014 or 2015. *Id.* at 25:6–25.

Defendant primarily argues that the court should accept the timeline Mrs. Mecham stated in her October 1, 2018 Fact Sheet because "it is the most recent and most consistent testimony." ECF No. 40 at 11 n.5. Accordingly, Defendant contends that five months after the June 20, 2012 procedure, Plaintiffs knew of Mrs. Mecham's initial injuries, which were the increased urinary

issues and dyspareunia. Thus, Defendants allege that these injuries represent the beginning of Plaintiffs' "actual damages" for purposes of the *Aragon* limitations test, and the court should set the injury date at November 20, 2012—approximately five months after Mrs. Mecham's procedure. Alternatively, Defendant argues that if the court chooses to credit Mrs. Mecham's deposition testimony that her injuries did not begin until the latter date of "six months to a year" after her surgery, her injury date would be June 20, 2013, at the latest. As Defendant points out, June 20, 2013 is still over two years before Plaintiffs filed suit. Therefore, Defendant contends that Plaintiffs knew or should have known about Mrs. Mecham's "actual damages" injury on November 20, 2012, or by June 20, 2013, at the latest.

Plaintiffs ask the court to follow the timeline Mrs. Mecham articulated in her deposition. They contend that "[a]pproximately six months to one-year post-implant, [Mrs. Mecham] experienced 'leaking' when she played sports, sneezed, or walked a certain way," her "pain during intercourse started approximately six months to one year after the implant," and "her desire for sexual intercourse had gotten noticeably worse in the 'last few years,' which she clarified as approximately 2014 to 2015." ECF No. 42 at 1–3. According to Plaintiffs, the court should find that, for purposes of the limitations period, Mrs. Mecham did not discover her injuries until some time in 2014 to 2015 when Mrs. Mecham knew the full extent of her injuries.

Interpreting the facts in favor of Plaintiffs as the nonmovant, the court credits Mrs. Mecham's deposition testimony that she first experienced her urinary issues and dyspareunia up to one year after her implant procedure. Therefore, Mrs. Mecham first experienced "actual damages" sufficient to begin her limitations period on or around June 20, 2013, at the latest. Although Mrs. Mecham testified that she did not experience her decreased libido injury until as late as 2015, that is of no consequence to the issue of when she discovered her injury for calculating

10

the accrual of Plaintiffs' claims because Plaintiffs' discovery of their "actual damages" injury "does not mean the plaintiff must realize the full extent of" their harm, *see McHenry*, 724 F. Supp. at 839, and "later injuries, even new and severe ones, do not re-start" the UPLA limitations period, *Cannon*, 2009 WL 350561, at *6 n.2. Therefore, Plaintiffs' injuries began, at the latest, on June 20, 2013, which is over two years before Plaintiffs filed their Complaint.

### C. DISCOVERY OF THE DEFENDANT'S IDENTITY

Second, the court must determine when Plaintiffs knew or should have known that C.R. Bard, Inc. was the manufacturer of her allegedly defective pelvic mesh product. Plaintiffs' "knowledge of a possible legal responsibility *of this defendant* . . . accrues only after the plaintiff discovers the identity of the product manufacturer." *Aragon*, 857 P.2d at 253 (relying on *N. Coast Air Servs., Ltd. v. Grumman Corp.*, 759 P.2d 405 (Wash. 1988)). But "plaintiffs cannot simply wait for information regarding a potential defendant to come to them. Rather, a plaintiff has a duty to act with reasonable diligence to ascertain the identity of a defendant." *Pratt v. Cavagna N. Am., Inc.*, No. 2:13-cv-107, 2013 WL 6146075, at *4 (D. Utah Nov. 21, 2013) (unpublished) (internal citation and quotations omitted); *see also Griffiths-Rast v. Sulzer Spine Tech*, 216 F. App'x 790, 796 (10th Cir. 2007) (unpublished) (citing *Aragon* for proposition that plaintiffs have a duty to seek out the identity of a manufacturer). Here, Plaintiffs knew, or with reasonable diligence should have discovered, the identity of Defendant on or around the time of Mrs. Mecham's implant procedure.

In *Griffiths-Rast v. Sulzer Spine Tech*, for example, the plaintiff brought a medical products liability suit, alleging the device used in her spinal fusion surgery was defective. *See* 216 F. App'x at 793. Although the plaintiff discovered the alleged defect and her injury soon after her procedure, she argued that her claims had not accrued because she did not discover the identity of the manufacturer until over two years later. *See id.* The plaintiff reasoned that the manufacturer's

11

identity was undiscoverable earlier because she was waiting for her physician's "confirmation." *Id.* at 796. Additionally, the *Griffiths-Rast* plaintiff argued that her delay was related to her legal team's mistaken identity of the manufacturer, which "had gone through a number of company name changes and was a foreign corporation without a registered agent in Utah." *Id.* at 796–97. The Tenth Circuit enforced the statute of limitations and rejected the plaintiff's proposed delayed limitations period, holding that a reasonably diligent plaintiff would have discovered the defendant's identity sooner. *See id.* The court reasoned that because the plaintiff had signed a consent form on the day of her surgery that included the allegedly defective device's product name, "a reasonable jury could not find that it would take over two years to determine the manufacturer of a trademarked medical device when the party knows the correct name of that device." *Id.* at 796.

Similarly here, a plaintiff exercising due diligence in Mrs. Mecham's circumstances could have determined C.R. Bard, Inc.'s identity before July 16, 2013, two years before Plaintiffs filed their Complaint. Like in *Griffiths-Rast*, Mrs. Mecham knew or could have discovered the product name of her implant on the day of her surgery because her medical file contained the correct name of her pelvic mesh product: the "Align TO Trans-Obturator Urethral Support System." *See* ECF No. 39–5 at 2.[5] And with the correct name of the product, a reasonably diligent plaintiff could

---

[5] As Defendant points out, even if Plaintiffs did not have possession of Mrs. Mecham's medical file after her implant, a reasonably diligent plaintiff would have exercised her right to obtain her records from the hospital and ascertain the product name of her pelvic mesh product and identity of the manufacturer. *See* UTAH CODE § 78B–5–618 (state law providing for a patient's right to "inspect or receive a copy of the patient's records from a health care provider"); 5 C.F.R. § 164.524 (federal "right of access" rule for medical records covered by HIPAA); *see also Ziots v. Stryker Corp.*, No. 2:15-CV-00104 DS, 2015 WL 5158725, at *3 (D. Utah Sept. 2, 2015) (unpublished) (considering the plaintiff's "ability and right to request or copy her medical records" in determining when a reasonably diligent plaintiff would have discovered the identity of the medical product manufacturer), *aff'd*, 655 F. App'x 622 (10th Cir. 2016).

12

have discovered in a basic internet search that C.R. Bard, Inc. is the manufacturer of the Align TO products.[6] Indeed, Plaintiffs here faced even fewer barriers to uncovering the Defendant's identity than the plaintiff in *Griffiths-Rast* because Mrs. Mecham was neither misled about the identity of Defendant, nor has Defendant undergone company name changes in the time between the procedure and when Plaintiffs filed their lawsuit. *See* 216 F. App'x at 796–97; *accord Aragon*, 857 P.2d at 253–54 (remanding to further evaluate the plaintiff's delay in discovering the manufacturer's identity because an intermediary entity did not disclose the identity when asked). In sum, Plaintiffs do not meaningfully contest both that they had access or could have accessed Mrs. Mecham's medical records to discover the name of her pelvic mesh product, and that even a cursory internet search of the product name would have uncovered the Defendant's identity. Rather, it appears Plaintiffs "simply wait[ed] for information regarding a potential defendant to come to them," which is insufficient to delay the start of their limitations period. *See Pratt*, 2013 WL 6146075, at *4.

Because Defendants have demonstrated that the name of Mrs. Mecham's implanted pelvic mesh product was readily available and Plaintiffs have presented no evidence to the contrary, a reasonably diligent plaintiff should have been able to "determine the manufacturer of a trademarked medical device when the party knows [or should have known] the correct name of that device." *See Griffiths-Rast*, 216 F. App'x at 796. Therefore, a reasonably diligent plaintiff in Mrs. Mecham's position had sufficient information to discover that the manufacturer was C.R.

---

[6] In a depersonalized google search of "Align TO Trans-Obturator Urethral Support System" that is constrained to results available between June 20, 2012, and July 16, 2013, several results containing governmental reports, articles, and medical device news blogs that name C.R. Bard populate on the first few search pages. *See* Google Search, https://tinyurl.com/yafvxtzp (last visited May 26, 2020).

Bard, Inc. as early as the day of Mrs. Mecham's surgery on June 20, 2012, and certainly well over two years before Plaintiffs filed their suit.

### D. DISCOVERY OF A "POSSIBLE CAUSAL RELATION"

Third, the court must determine when Plaintiffs knew or should have known that the Defendant's pelvic mesh implant was the purported cause of Mrs. Mecham's injuries. To prove the date of causation discovery for calculating the limitations period, Defendant must demonstrate when Plaintiffs knew or should have known that the pelvic mesh product had a "possible causal relation" to Mrs. Mecham's injuries. *Adams*, 705 F. App'x at 747; *see also Pratt*, 2013 WL 6146075, at *3 (applying the "possible causal relation" standard in a UPLA limitations case); *Hansen*, 2011 WL 6100848, at *3 (same).[7] Because "the knowledge required of a plaintiff is inquiry notice," the plaintiff need not have a "confirmed diagnosis about the causal relation to trigger the running of the statute of limitations." *Hansen*, 2011 WL 6100848, at *3 (citing *McKinnon*, 815 F. Supp. at 420); *see also Cannon*, 2009 WL 350561, at *6 ("Under Utah law, plaintiffs are not required to receive definitive confirmation of the cause of their harms to be on reasonable notice." (citation omitted)). Rather, for calculating the time of causation discovery, Plaintiffs must merely have "sufficient information to put [them] on notice to make further inquiry

---

[7] Two unpublished Fourth Circuit decisions on which Plaintiffs rely have used a more onerous "cause-in-fact" standard to adjudicate the third prong of the *Aragon* UPLA limitations period test. *See Timothy v. Bos. Sci. Corp.*, 665 F. App'x 295, 297 (4th Cir. 2016); *Robinson v. Bos. Sci. Corp.*, 647 F. App'x 184, 186 (4th Cir. 2016). But those cases merely assumed, without deciding, that a cause-in-fact standard applied. *See Timothy*, 665 F. App'x at 297; *Robinson*, 647 F. App'x at 186–87. Because the Fourth Circuit found that the defendant had demonstrated the plaintiff knew or should have known the cause of her injuries under either a "possible causal relation" or a "cause-in-fact" standard, the court applied the cause-in-fact standard. *See, e.g.*, *Robinson*, 647 F. App'x at 187 n.4. The Tenth Circuit caselaw applying the UPLA, however, has used the less demanding "possible causal relation" standard to trigger the limitations period, *See, e.g.*, *Adams*, 705 F. App'x at 747. Therefore, the court applies the "possible causal relation" standard.

14

if they harbor doubts or questions" about the cause of Mrs. Mecham's injuries. *Pratt*, 2013 WL 6146075, at *3 (quoting *Macris*, 24 P.3d at 990).

Defendant argues that Mrs. Mecham "knew of the possible causal relationship between her injuries and the Align TO by November 20, 2012 because" she attested on her two Fact Sheets that "things we[re] different than before [the] mesh was inserted." ECF No. 40 at 12–13. Moreover, Mrs. Mecham testified at her deposition that her urinary issues increased in severity after the procedure and she had never experienced dyspareunia or decreased libido before her implant surgery. *See id.* According to Defendant, this testimony shows that Plaintiffs made or should have made a causal connection between the Defendant's pelvic mesh product and her injuries as soon as she started to experience symptoms, which she stated was either five months or between six-months-to-one-year after her surgery.

Plaintiffs disagree, arguing primarily that because "no physician had told [Mrs. Mecham that] pain during sexual intercourse was related to her mesh," Plaintiffs could not have made a causal connection to her injuries more than two years before they filed suit. ECF No. 42 at 3. Additionally, Plaintiffs claim they could not have been on notice that the pelvic mesh product was the cause of Mrs. Mecham's injuries because her post-implant urinary issues were similar in kind to what she experienced before the surgery. *See id.*[8] Although this court takes heed of the

---

[8] Plaintiffs also argue that because Defendant has raised a defense on the merits that its product is not defective, it is "self-contradictory and disingenuous" for Defendant to also raise its statute of limitations defense on the basis that a "lay plaintiff should have known" that her injuries were caused by the Defendant's pelvic mesh product. ECF No. 42 at 5. This argument is without merit. After all, Plaintiffs contention applies in any case where a defendant presents defenses based on both the merits and the statute of limitations. Certainly, a defendant is not prevented from asserting a defense on the merits if it also argues the statute of limitations bars a suit because the plaintiff should have known his or her claims had accrued earlier. In other words, it is not "self-contradictory or disingenuous" for Defendant to argue that Plaintiffs had or should have had enough information to suspect that a potential defect in Mrs. Mecham's implant was causing her

difficulties Plaintiffs have endured after Mrs. Mecham's implant procedure, the court finds that a reasonably diligent plaintiff would have been on inquiry notice that the Defendant's product was the alleged cause of Mrs. Mecham's injuries over two years before she filed suit for multiple reasons.

First, the record indicates that Plaintiffs at least recognized a possible causal relation between her initial injuries and the Defendant's pelvic mesh product when she started experiencing her urinary incontinence and dyspareunia. Mrs. Mecham's amended Plaintiff Fact Sheet from October 1, 2018, prompted her to answer: "When did you first attribute [your] bodily injuries to the pelvic mesh product(s)?" ECF No. 39–2 at 8. She responded: "things we[re] different than before mesh was inserted." *Id.* Mrs. Mecham provided the same answer to the same question on her initial Plaintiff Fact Sheet from April 23, 2018. *See* ECF No. 39–4 at 8. Although this answer is somewhat unresponsive to the question, it represents that Mrs. Mecham at least recognized that the beginning of her symptoms had a "possible causal relation" to her implanted pelvic mesh product. Therefore, for purposes of the limitations period, the date of Plaintiffs' discovery of causation can be tied to the date of Plaintiffs' injury, which is June 20, 2013, at the latest.

Second, even if Plaintiffs did not make the causal connection between Mrs. Mecham's symptoms and her pelvic mesh implant, a reasonably diligent person in her position would have done so. Even a basic inquiry concerning Mrs. Mecham's symptoms would have led to two Food and Drug Administration (FDA) reports warning about the potential harms of pelvic surgical mesh. *See* U.S. FOOD AND DRUG ADMIN, UROGYNECOLOGIC SURGICAL MESH: UPDATE ON THE SAFETY AND EFFECTIVENESS OF TRANSVAGINAL PLACEMENT FOR PELVIC ORGAN PROLAPSE (2011),

---

injuries such that her claims accrued beyond the limitations period, and then argue that, ultimately, Plaintiffs are mistaken in suspecting that Defendant's product was defective.

16

*available at* https://www.fda.gov/media/81123/download (providing an update to an earlier October 2008 report issued to "inform clinicians and patients of adverse events related to urogynecologic use of surgical mesh, and to provide recommendations on how to mitigate risks and how to counsel patients.").[9] The FDA published these reports before Mrs. Mecham's surgery, and both indicated that pelvic mesh devices could lead to the health complications she experienced, such as dyspareunia and urinary problems. *Id.* at 7. Because the FDA had issued an official warning about the link between the pelvic mesh Mrs. Mecham had implanted and the injuries she suffered, a reasonably diligent plaintiff inquiring about her symptoms would have been on notice that the pelvic mesh had a "possible causal relation" to her injuries. Indeed, the Fourth Circuit, applying the UPLA statute of limitations, found that the FDA report would be sufficient to put a reasonably diligent plaintiff on notice about causation. *See Timothy*, 665 F. App'x at 298 (finding that because of the FDA warning, the court "ha[d] no trouble concluding [the plaintiff] had notice that the mesh was the cause-in-fact of her injuries"). Therefore, a reasonably diligent plaintiff would have been on inquiry notice about the cause of her injuries at the time her symptoms began, which is, at the latest, June 20, 2013.[10]

Third, the court rejects Plaintiffs' core contention that the time of causation discovery should be delayed because a doctor had not attributed Mrs. Mecham's symptoms to the Defendant's product. Generally, "[t]he discovery rule does not allow plaintiffs to delay filing suit until they have ascertained every last detail of their claims." *McCollin*, 50 F. Supp. 2d at 1124.

---

[9] Although the FDA reports are not contained in this record, the facts contained in the reports can be judicially noticed because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2); *see also Timothy*, 665 F. App'x at 298 n.4 (taking judicial notice of the October 2008 FDA report).

[10] Moreover, the MDL 2187 Master Complaint largely relies on the FDA Reports, *see* MDL 2187 Master Complaint ¶¶ 29–33, and Plaintiffs' Short Form Complaint incorporates these allegations, *see* ECF No. 39–1 at 2.

And as this court has repeatedly reaffirmed in the medical products liability context, a doctor's "definitive confirmation of the cause of a plaintiff's injury is not required [for the plaintiff] to be on reasonable notice." *Hansen*, 2011 WL 6100848, at *5; *see also Cannon*, 2009 WL 350561, at *6 (holding that it is "not material" that the plaintiffs lacked a doctor's opinion concerning a causal connection between the allegedly defective product and their injuries); *McKinnon*, 815 F. Supp. at 421 (same). In other words, a doctor informing a plaintiff about a possible causal relation between an allegedly defective product and her injuries is sufficient, but not necessary, to put the plaintiff on notice and trigger the limitations period. Adopting a contrary rule would allow a plaintiff to toll the limitations period by delaying her consultation with her doctor and "would render [the UPLA statute of limitations provision] essentially meaningless." *McKinnon*, 815 F. Supp. at 421. Therefore, the fact that Mrs. Mecham's doctor was yet to establish a causal link between her injuries and her implanted Align TO surgical mesh product does not warrant delaying the start of Plaintiffs' limitations period.

Additionally, even if Plaintiffs were waiting to file suit until they received confirmation from Mrs. Mecham's doctor regarding a possible causal relation between the pelvic mesh and her injuries, Defendant has shown that a reasonably diligent plaintiff would have had such a consultation sooner. And in Plaintiffs' response to this Motion, they have presented no countervailing evidence explaining *why* they had sufficient facts to file suit on July 16, 2015, but not beforehand when Mrs. Mecham started experiencing adverse symptoms at most one year after her June 20, 2012 procedure. This court recently recognized the longstanding general principle that a plaintiff's "allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner." *Sekisui SPR Americas, LLC*, 2019 WL

4696278, at *8 (quoting *Wood v. Carpenter*, 101 U.S. 135, 140–41 (1879)) (alterations omitted). Because Plaintiffs have not provided an "explanation as to when and how [they] discovered the information that permitted [them] to pursue [their] claims," Plaintiffs "ha[ve] not shouldered [their] burden of showing that the discovery rule excuses [their] untimely claims." *See id.*

In close cases, the exercise of due diligence is typically a question of fact to be resolved by the jury. *Id.* at 418 (citing *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985)). But where Defendant has demonstrated that a reasonably diligent plaintiff would have uncovered the "last event necessary to complete the cause of action" beyond the limitations period, *Russell Packard Development, Inc.*, 108 P.3d at 746, and Plaintiffs have not pointed to any genuine dispute of material fact to refute this contention, the court may enforce the statute of limitations "as a matter of law," *McKinnon*, 815 F. Supp. at 418 (citation omitted). Here, the court finds that construing the facts in favor of Plaintiffs, Mrs. Mecham discovered her harm at the latest on June 20, 2013, and with due diligence, could have discovered the identity of C.R. Bard, Inc. and the potential causal link to its pelvic mesh product when she experienced her initial symptoms. Accordingly, the court finds that Plaintiffs' claims accrued on June 20, 2013, which is over two years before Plaintiffs filed this lawsuit on July 16, 2015. Although the court is sympathetic to the obvious hardships that Plaintiffs have experienced, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (citation omitted). Therefore, the court enforces the UPLA statute of limitations and holds that all of Plaintiffs' claims are time-barred.

## IV.   ORDER

For the foregoing reasons, the court GRANTS the Defendant's Motion for Summary Judgment.

Signed May 27, 2020

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge